IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| GILBERTO ROSALES and HECTOR JOSE POLANCO-ALVAREZ<br><br>*individually and on behalf of themselves and others similarly situated*,<br><br>　　　　*Plaintiffs*,<br><br>　　v.<br><br>CAPITAL INTERIOR CONTRACTORS, INC., GTO DRYWALL, INC., and RDIC, INC.<br><br>　　　　*Defendants*. | Civil Action No.: |

## COLLECTIVE AND CLASS ACTION COMPLAINT

### INTRODUCTION

　　1.　　Wage theft is rampant in the Commonwealth of Virginia, prompting the recent adoption of new Virginia State laws designed to compensate its victims and incentivize employers' compliance with lawful wage payment practices. This exploitation of workers in Virginia has reached as far as the companies retained to construct the new General Assembly Building in Richmond, resulting in scores of construction workers who were paid less than their lawfully owed wages by their employers. This lawsuit seeks to compensate these workers and hundreds of others who worked for these companies at construction projects around the state.

2. Worker misclassification is a form of wage theft and payroll abuse where workers that should be classified as employees are illegally classified as independent contractors. By misclassifying workers, employers deny employees their lawful wages (including overtime premiums) and benefits, while simultaneously underfunding social insurance programs like Social Security, Medicaid, unemployment insurance, and workers' compensation. One way in which misclassification and other forms of wage theft are perpetrated is through the use of subcontractors who fail to follow federal and state wage/hour and misclassification laws. Defendants, as well as other subcontractors of Defendant Capital Interior Contractors, Inc., have engaged in such conduct at the construction site of the new General Assembly Building (the building designed to house the legislators tasked with preventing these abuses) and elsewhere around the state, the effect of which is to deny employees on Defendants' construction sites their lawfully owed wages and benefits in violation of federal and Virginia wage and misclassification laws.

3. Plaintiffs Gilberto Rosales and Hector Jose Polanco-Alvarez (together, "Plaintiffs") by and through their undersigned counsel, bring this action on behalf of themselves and others similarly situated against Defendants Capital Interior Contractors, Inc. ("Capital Interior"), GTO Drywall, Inc. ("GTO"), and RDIC, Inc. ("RDIC") for failing to pay their employees their legally mandated wages in violation of Section 16(b) of the Federal Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§ 201 *et. seq.* and misclassifying their employees as independent contractors in violation of Virginia Misclassification Law, Va. Code § 40.1-28.7:7.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over Defendants pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), and 28 U.S.C. § 1337(a) relating to "any civil action or proceeding arising under an Act of Congress regulating commerce." Subject matter jurisdiction is invoked under 28 U.S.C. § 1331.

5. This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367(a), which confers federal subject matter jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." As discussed below, Plaintiffs' state-law claims arise from a common set of operative facts—*i.e.,* their employment by Defendants as construction workers—and are so related to the claims within the original jurisdiction of the Court that they form part of the same case or controversy.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and Local Civil Rule 3(C), as all Defendants are residents of Virginia and at least one Defendant resides in both this District and the Richmond Division.

**PARTIES**

7. Plaintiff Gilberto Rosales is a resident of Virginia and was employed by Defendant Capital Interior and Defendant GTO as a construction worker in and around Richmond, Virginia.

8. Plaintiff Hector Jose Polanco-Alvarez is a resident of Virginia and was employed by Defendant Capital Interior and Defendant RDIC as a construction worker in and around Richmond, Virginia.

9. Defendant Capital Interior is a Richmond based company that does commercial construction, specializing in drywall hanging and finishing.

10. GTO Drywall Inc. ("GTO") is a labor broker based in Chesterfield, Virginia which supplies construction workers to contractors.

11. RDIC, Inc. ("RDIC") is a labor broker based in Chesterfield, Virginia which supplies construction workers to contractors

12. Defendant Capital Interior is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

13. On information and belief, Defendants GTO and RDIC are enterprises whose annual gross volume of sales made or business done are not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)

14. On information and belief, Defendants are companies with employees involved in interstate commerce, including by regularly performing work on construction projects in Virginia and other states, by purchasing and using materials produced and transported in interstate commerce in construction projects, and by regularly using interstate payment systems to make and receive payments relating to construction projects and by regularly using interstate means of communications to facilitate work on construction projects.

**FACTUAL ALLEGATIONS**

15. During the three-year period prior to the date of the filing of this Complaint Defendant Capital Interior is or had been a construction contractor at numerous construction projects within Virginia (the "Virginia Projects").  Upon information and belief, the construction projects on which Defendant Capital Interiors worked during this period include but are not limited to:

    a. Virginia General Assembly Building at 201 North 9th Street in Richmond, Virginia. The General Contractor on this project was Gilbane Building Company.

    b. Virginia Commonwealth University Adult Outpatient Facility, 599 North 10th Street in Richmond, Virginia. The General Contractor on this project was Hourigan.

    c. Altria building, 6601 West Broad Street in Richmond, Virginia

    d. Capital One West Creek Buildings, Capital One Drive in Henrico, Virginia.

    e. Amazon, 1601 Bellwood Road in Richmond, Virginia.

    f. Lidl Grocery Store #1105, 1209 Edison Road, Virginia Beach, Virginia. The General Contractor on this project was KBS, Incorporated.

    g. Fort Lee Barracks Project, 1450 B Avenue, Fort Lee, Virginia. The General Contractor on this project was Purcell Construction Corporation.

    h. Virginia United Methodist Homes, 2300 Cedarfield Parkway, Richmond, Virginia. The General Contractor on this project was Howard Shockey & Sons, Incorporated.

    i. Virginia Commonwealth University School of Allied Health Professions, 900 E. Leigh Street, Richmond Virginia. The General Contractor on this project was Whiting-Turner.

    j. Henrico Doctors Hospital, 1602 Skipwith Road, Richmond, Virginia. The General Contractor on this project was Brassfield and Gorrie.

    k. Commercial Building Alteration, 4881 Cox Road, Glen Allen, Virginia

    l. Lidl Grocery Store #1199, 4700 West Broad Street, Richmond, Virginia. The General Contractor on this project was KBS, Incorporated.

    m. Emily Couric Cancer Center, 1240 Lee Street, Charlottesville, Virginia. The General Contractor on this Project was Kjellstorm + Lee.

    n. Sentara Princess Anne Hospital, 2025 Glenn Mitchell Drive, Virginia Beach, Virginia. The General Contractor on this project was Whiting-Turner.

    o. Southside Emergency Care Center, 60 E. Roslyn Court, Colonial Heights, Virginia. The General Contractor on this project was Robins & Morton.

p.  First Watch The Daytime Café, 2850 Virginia Beach Boulevard, Virginia Beach, Virginia.  The General Contractor on this project was Heartland Construction.

q.  Chippenhaim Hospital Emergency Department, 7101 Janke Road, Richmond Virginia.  The General Contractor on this project was Robins & Morton.

r.  Chippenhaim Hospital, 7101 Jahnke Road, Richmond, Virginia.  The General Contractor on this project was Layton Construction.

s.  Office Building located at 5000 Dominion Boulevard, Glen Allen Virginia.  The General Contractor on this project was Hourigan.

t.  Floors 5, 7, and 8, 919 East Main Street, Richmond, Virginia.  The General Contractor on this project was Gilbane Building Company.

u.  American Civil War Museum, 490/500 Tredgar Street, Richmond, Virginia.  The General Contractor on this project was Whiting-Turner.

v.  B+ G Place Apartments, 2607 Colonial Avenue, Norfolk, Virginia.  The General Contractor on this project was The Monument Companies.

w.  Drury Hotel, 11049 West Broad Street, Glen Allen, Virginia.  The General Contractor on this project was Drury Development Corporation.

x.  Ivy Mountain Musculoskeletal Center & Parking Garage, 3113 Reed Lane, Charlottesville, Virginia.  The General Contractor on this project was Whiting-Turner.

y.  Bird Hall and Nicholas Center, John Tyler Community College, 13101 Jefferson Davis Highway, Chester, Virginia.  The General Contractor on this project was Donley Construction.

z.  Woodberry School, 898 Woodberry Forest Road, Orange, Virginia.  The General Contractor on this project was Kjellstrom & Lee.

aa.  Office Building, 14051 Saint Francis Boulevard, Midlothian, Virginia.  The General Contractor on this project was Tayor and Parrish Construction.

bb.  Willard Hall, 1301 College Avenue, Fredericksburg, Virginia.  The General Contractor on this project was Kjellstrom & Lee.

cc.  Jepson Science Center, 1301 College Avenue, Fredericksburg, Virginia.  The General Contractor on this project was Donley Construction.

dd. Hampden Sydney Settle Hall, 183 Pannill Drive, Hampden Sydney, Virginia. The General Contractor on this project was WM Jordan Company.

ee. Topgolf, 2308 Westwood Avenue, Richmond, Virginia. The General Contractor on this project was ARCO/Murray.

ff. UVA Chemistry Building, 430 McCormick Road, Charlottesville, Virginia. The General Contractor on this project was Whiting-Turner.

gg. Westminster Canterbury, 1600 Westbrook Avenue, Richmond, Virginia. The General Contractor on this Project was Gilbane Building Company.

hh. St. Mary's Hospital, 5801 Bremo Road, Richmond, Virginia. The General Contractor on this project was Taylor and Parrish Construction.

16. To obtain workers on its construction sites, Defendant Capital Interior uses the services of "labor brokers" or "labor subcontractors." Labor brokers or labor subcontractors provide workers to Capital Interior, but Capital Interior maintains many of the traditional functions of the employment relationship with these workers, including setting the workers' schedules, providing the workers with direct and indirect worksite supervision, setting or influencing worker's rates of pay, and maintaining, as a practical matter, the power to fire or demote workers. Defendants GTO and RDIC are some of the labor brokers that Capital Interior used on the Virginia Projects.

**Gilberto Rosales**

17. From approximately July to November 2020, Plaintiff Rosales worked for Defendants Capital Interior and GTO at a variety of projects.

18. GTO was and is a labor broker or labor subcontractor to Capital Interior on multiple projects.

19. Plaintiff Rosales performed work for Defendants Capital Interiors and GTO on the Virginia General Assembly Building, located at 201 North 9th Street in Richmond, Virginia (the

7

"General Assembly Project"). The General Contractor on the General Assembly Project was Gilbane Building Company.

20. Before he was permitted to work on the General Assembly Project, Plaintiff Rosales was required to be drug tested at Capital Interior's office. On information and belief, all workers on the General Assembly Project were drug tested at Capital Interior's office.

21. While working on the General Assembly Project, Plaintiff Rosales was typically given daily work instructions and supervised by an employee of Capital Interior.

22. While working on the General Assembly Project, Plaintiff Rosales's hours were set by Capital Interior.

23. While working on the General Assembly Project, Plaintiff Rosales would sign in on two sign-in sheets daily – one for Capital Interior and one for GTO.

24. Plaintiff Rosales worked for Defendant Capital Interior and Defendant GTO on the Capital One West Creek Buildings located in Henrico, Virginia (the "Capital One Buildings Project").

25. While working on the Capital One Buildings Project, Plaintiff Rosales was typically given daily work instructions and supervised by an employee of Capital Interior.

26. While working on the Capital One Buildings Project, the Capital Interior foreman would write down the names of the individuals working on the project each day.

27. While working on the Capital One Buildings Project, Plaintiff Rosales's hours were set by Capital Interior.

28. Plaintiff Rosales performed work for Defendant Capital Interior and Defendant GTO as a construction worker at the Virginia Commonwealth University Adult Outpatient

facility, located at 599 North 10th Street in Richmond Virginia (the "VCU Project"). The General Contractor on the VCU Project was Hourigan Construction Company.

29. While working on the VCU Project, Plaintiff Rosales's daily work instructions were directed by Capital Interior and typically communicated to him by an employee of Defendant RDIC.

30. While working on the VCU Project, Plaintiff Rosales would sign in on a GTO sign-in sheet. Several labor brokers were present on this project, and employees would sign in on the sheet for their respective labor broker. The names on each broker's sign in sheet would then be transferred onto one sheet for Defendant Capital Interior.

31. While working on the VCU Project, Plaintiff Rosales's hours were set by Capital Interior.

32. Plaintiff Rosales performed work for Defendant Capital Interior and Defendant GTO at the Altria Building, located at 6601 West Broad Street in Richmond Virginia (the "Altria Project").

33. While working at the Altria Project, Plaintiff Rosales was supervised by an employee of Defendant Capital Interior.

34. While working at the Altria Project, Plaintiff Rosales's hours were set by Capital Interior.

35. Plaintiff Rosales was regularly compensated by check from GTO that did not have any payroll deductions or tax withholding.

36. Plaintiff Rosales generally did not receive paystubs.

37. While working for Defendants Capital Interior and GTO, Plaintiff Rosales sometimes worked more than forty hours in a given workweek, but was not compensated at the legally required one-and-one-half times his regularly hourly rate for hours worked over forty.

38. For example, on September 3, 2020, Defendant GTO wrote a check to Plaintiff Rosales to compensate him for 48 hours of work the prior week.  However, he was not compensated with an overtime premium for his hours worked over forty.

**Hector Jose Polanco-Alvarez**

39. From approximately January 2020 to July 2020, Plaintiff Polanco-Alvarez worked for Defendants Capital Interior and RDIC on two projects.

40. RDIC was and is a labor broker or labor subcontractor to Capital Interior on multiple projects.

41. Plaintiff Polanco-Alvarez performed work for Defendants Capital Interior and RDIC on an Amazon facility located at 1601 Bellwood Road in Richmond, Virginia (the "Amazon Project").

42. While working on the Amazon Project, Plaintiff Polanco-Alvarez was typically given daily work instructions by a foreman paid by RDIC, who communicated instructions and feedback from Capital Interior to Plaintiff Polanco-Alvarez.

43. While working on the Amazon Project, Plaintiff Polanco-Alvarez's hours were set by Capital Interior.

44. Plaintiff Polanco-Alvarez performed work for Defendants Capital Interior and RDIC at the VCU Project.

45. While working on the VCU Project, Plaintiff Polanco-Alvarez was on some occasions provided work instructions by a foreman paid by RDIC, who communicated

instructions and feedback from Capital Interior to Plaintiff; and sometimes provided work instructions by a foreman employed directly by Capital Interior.

46. While working on the VCU Project, Plaintiff Polanco-Alvarez's hours were set by Capital Interior.

47. Plaintiff Polanco-Alvarez was regularly compensated in cash. No payroll deductions or tax withholding was taken from his pay.

48. Plaintiff Polanco-Alvarez did not receive paystubs.

49. While working for Defendants Capital Interior and RDIC, Plaintiff Polanco-Alvarez frequently worked more than forty hours in a given workweek, but was not compensated at the legally required one-and-one-half times his regularly hourly rate for hours worked over forty.

**All Plaintiffs and Others Similarly Situated**

50. Capital Interior set Plaintiffs' schedules. Capital Interior determined the days and hours that Plaintiffs and others similarly situated needed to be at each worksite.

51. Capital Interior played a role in determining the rate individuals were paid. When a labor broker sends a worker to a Capital Interior project, a Capital Interior employee determines whether the worker's skillset merits the amount that Capital Interior is paying the labor broker. If Capital Interior believes the worker's skillset is insufficient for the rate they are paying, it informs the labor broker that it is reducing the amount it is paying the broker for that worker.

52. Defendant Capital Interior provided Plaintiffs and others similarly situated with heavy-duty equipment and some power tools.

53. On some occasions, workers on the Virginia Projects would switch between labor brokers but their job duties remained unchanged. For example, one individual who was being

paid by a labor broker called RJO and jointly employed by Capital Interior on some of the Virginia Projects arrived at work one day to learn that RJO was no longer working on the project. He was told he could remain working on the project but would be getting paid by RDIC instead.

54. Plaintiffs and other similarly situated individuals at the Virginia Projects were and are jointly employed to do this work by Defendant Capital Interiors and one or more of its subcontractors, including but not limited to Defendants GTO and RDIC.

55. While employed by Defendants at the Virginia Projects, Defendants treated Plaintiffs and other similarly situated individuals as independent contractors, when in fact they were employees.

56. For example, when Defendants compensated Plaintiffs and other similarly situated individuals, there were no payroll deductions.

57. For example, Plaintiffs and other similarly situated individuals who performed work for Defendants at the Virginia Projects were not paid the proper overtime premiums for hours worked over 40 in any one workweek.

58. The services of Plaintiffs and other similarly situated individuals at the Virginia Projects were directed and controlled by Defendant Capital Interior and its subcontractors.

59. Depending on the project, Plaintiffs and others similarly situated were either supervised directly by Capital Interior personnel or supervised indirectly by Capital Interior personnel. Plaintiffs and others similarly situated were indirectly supervised by Capital Interior when Capital Interior personnel communicated their instructions and feedback to Plaintiffs through one of their subcontractors.

60. Defendants provided Plaintiffs and other similarly situated individuals at the Virginia Projects their daily work assignments and direct, supervise, and control Plaintiffs' day-to-day work.

61. Capital Interior maintained a record of the hours worked by Plaintiffs and other similarly situated individuals at the Virginia Projects.

62. The work performed by Plaintiffs and other similarly situated individuals at the Virginia Projects is within the usual course of Defendants' businesses. Plaintiffs were not engaged in work that is customarily an independently established trade, and Plaintiffs were not exempt employees.

63. Defendant Capital Interior was a joint employer of each Plaintiff. The employer-employee relationship existed for reasons that included the following: Capital Interior supervised, directed, and controlled the work of each Plaintiff, set Plaintiffs' schedules, had, as a practical matter, the power to fire Plaintiffs and others similarly situated, had the power to determine or influence Plaintiffs' rate of pay, and maintained employment time records of Plaintiffs and others similarly situated.

64. Defendants were required by law to maintain accurate records of the wages paid and of and hours worked at the Virginia Projects for their benefit and such records, if maintained, will document in detail the work by Plaintiffs and others similarly situated that was not properly compensated. Such records are in the exclusive control of Defendants.

65. Defendants were required by law to provide Plaintiffs and other similarly situated individuals at the Virginia Projects pay stubs detailing their hours worked and their pay rate, but failed to do so.

66. As the employers of Plaintiffs and other similarly situated individuals at the Virginia Projects, Defendants are liable for the unpaid wages of Plaintiffs and other similarly situated individuals at the Virginia Projects.

## COLLECTIVE ACTION ALLEGATIONS

67. This action is maintainable as an opt-in collective action pursuant to 29 U.S.C. § 216(b).

68. Defendants failed to pay Plaintiffs and all others similarly situated one-and-a-half times their regular rate of pay for those hours worked in excess of forty in any one workweek, as required by the FLSA, even though Plaintiffs and all others similarly situated regularly worked more than forty hours during workweeks.

69. This action can, and should, be maintained as a collective action for all claims to unpaid overtime compensation due that can be redressed under the FLSA.

70. Plaintiffs seek certification of their claims as a collective action on behalf of all past and present non-exempt employees of Defendant Capital Interior and any of its subcontractors (including, but not limited to, Defendants GTO and RDIC) working on any Capital Interior Projects in Virginia who, while working for Defendant Capital Interior were not paid one-and-a-half times their regular rate of pay for those hours worked in excess of forty in any one workweek, at any time from the earliest date permitted by law until the date of judgment.

71. Members of the proposed collective action are similarly situated. Members of the proposed collective action have been subjected to the same or substantially the same pay policies and practices. The identities of the members of the proposed collective action are known to Defendants and can be located through Defendants' records.

72. Plaintiffs hereby consent to be party plaintiffs in this action under 29 U.S.C. § 216(b) and any state law claim with respect to which such consent is required. Plaintiffs' written consents are attached hereto. If this case does not proceed as a collective action, Plaintiffs intend to seek relief individually.

## CLASS ACTION ALLEGATIONS

73. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring class-action claims for misclassification under Va. Code Ann. § 40.1-28.7:7.

74. Plaintiffs bring these class-action claims on behalf of themselves and all other individuals who: 1) were misclassified as independent contractors, and 2) were jointly employed by Capital Interior and any of its subcontractors (including, but not limited to, GTO and RDIC), and 3) performed construction work for Defendant Capital Interior; at any time from the earliest date actionable under the limitations period applicable to given claim until the date of judgment. ("Proposed Rule 23 Class").

75. Members of the Proposed Rule 23 Class are readily ascertainable. The identity of class members may be determined from Defendants' records.

76. The Proposed Rule 23 Class meets all the requirements of Rule 23(a) and (b)(3):

    a. Numerosity: Upon information and belief, there are scores of persons who worked for Defendant Capital Interior and its subcontractors in Virginia that have been subjected to the challenged practices. Therefore, joinder of all class members would be impracticable.

    b. Commonality: Plaintiffs and all members of the Proposed Rule 23 Class have been compensated pursuant to the unlawful practices alleged herein and, therefore, one or more questions of law or fact are common to the Proposed Rule 23 Class. These common questions include, but are not limited to, the following:

      i.      Whether Defendant Capital Interior and its subcontractors are employers and/or joint employers of Plaintiffs and members of the Proposed Rule 23 Class;

      ii.     Whether Defendant Capital Interior and its subcontractors misclassified Plaintiffs and members of the proposed Rule 23 Class as independent contractors;

      iii.    Whether Defendant Capital Interiors and its subcontractors misclassification resulted in Defendant Capital Interiors and its subcontractors failure or refusal to pay Plaintiffs and members of the Proposed Rule 23 Class wages at overtime premium rates for all time worked in excess of 40 hours per week and failed to provide other benefits guaranteed employees.

    c. Typicality: Plaintiffs and members of the Proposed Rule 23 Class were subjected to the same unlawful policies, practices, and procedures and sustained similar losses, injuries, and damages. All class members were subjected to materially similar compensation practices by Defendant Capital Interior and its subcontractors, as alleged herein, and were denied lawfully owed payments and misclassified as independent contractors.  Plaintiffs' claims are therefore typical of the claims that could be brought by any member of the Proposed Rule 23 Class, and the relief sought is typical of the relief that could be sought by each member of the Proposed Rule 23 Class in separate actions.

    d. Adequacy of Representation: Plaintiffs are able to fairly and adequately protect the interests of all members of the Proposed Rule 23 Class, as they are challenging the same practices as the Proposed Rule 23 Class as a whole, and there are no known conflicts of interest between

Plaintiffs and the members of the Proposed Rule 23 Class. Plaintiffs have retained counsel who have extensive experience with the prosecution of wage-and-hour claims and complex class-action litigation.

e. Predominance and Superiority: The common questions identified above predominate over any individual issues. A class action is superior to individual adjudications of this controversy. Pursuit of this action as a class would provide an efficient mechanism for adjudicating the claims of Plaintiffs and the members of the Proposed Rule 23 Class.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE FEDERAL FAIR LABOR STANDARDS ACT (FLSA) – OVERTIME

77. Plaintiffs re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

78. The FLSA requires employers to pay non-exempt employees an overtime premium of one and one half times their regular hourly rate for hours worked in excess of 40 hours in any one work week.

79. Defendants violated the FLSA by knowingly failing to pay Plaintiffs and other similarly situated individuals one and one half times their regular hourly rate for hours worked in excess of 40 hours in any one work week.

80. Plaintiffs were "employees" and Defendants were their "employer" under 29 U.S.C. § 203.

81. Defendants violations of the FLSA were repeated, knowing, willful, and intentional.

82. WHEREFORE, Defendants are liable to Plaintiffs, and all other similar situated individuals, under the FLSA, 29 U.S.C. § 216(b), for all unpaid wages and unpaid overtime wages, plus an equal amount in liquidated damages, attorney's fees, litigation expenses, costs, and any other and further relief this Court deems appropriate.

## COUNT II
## MISCLASSIFICATION -- Va. Code § 40.1-28.7:7

83. Plaintiffs re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

84. Va. Code § 40.1-28.7:7 provides that "[a]n individual who has not been properly classified as an employee may bring a civil action for damages against his employer for failing to properly classify the employee if the employer had knowledge of the individual's misclassification."

85. Va. Code § 40.1-28.7:7 further provides that "[i]f the court finds that the employer has not properly classified the individual as an employee, the court may award the individual damages in the amount of any wages, salary, employment benefits, including expenses incurred by the employee that would otherwise have been covered by insurance, or other compensation lost to the individual, a reasonable attorney fee, and the costs incurred by the individual in bringing the action."

86. Defendants knowingly improperly classified Plaintiffs and similarly situated individuals as independent contractors rather than employees, resulting in a denial to Plaintiffs and similarly situated individuals of overtime premiums and other employment benefits including insurance coverage and insurance benefits (including unemployment insurance benefits) which they would have been entitled to receive if they had been properly classified as employees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that the Court certify an FLSA collective action and a Virginia Misclassification Law (Va. Code § 40.1-28.7:7) class action, and enter judgment against Defendant on all counts and grant Plaintiffs and all similarly situated individuals the following relief:

a. Unpaid wages, plus an equal amount as liquidated damages, pursuant to the FLSA, 29 U.S.C § 216;

b. Unpaid wages, employment benefits, and other compensation owed to Plaintiffs and similarly situated individuals resulting from Plaintiffs' misclassification as independent contractors, pursuant to Va. Code § 40.1-28.7:7.

c. Such equitable relief as may be appropriate including enjoining Defendant from further violations of these laws;

d. Reasonable attorneys' fees and expenses incurred in the prosecution of this action;

e. Costs that Plaintiffs incur in the prosecution of this action;

f. Prejudgment and post-judgment interest as permitted by law; and

g. Award any additional relief the Court deems just.

Dated: December 1, 2020                    Respectfully submitted,

/s/ Rachel Nadas
Rachel Nadas, VSB # 89440
Matthew K. Handley (*pro hac vice forthcoming*)
HANDLEY FARAH & ANDERSON PLLC
777 6th Street, NW – Eleventh Floor
Washington, DC  20001
Telephone:    202-899-2991
email: rnadas@hfajustice.com

Matthew B. Kaplan, VSB # 51027

19

                        THE KAPLAN LAW FIRM
                        1100 N Glebe Rd, Suite 1010
                        Arlington, VA 22201
                        (703) 665-9529
                        mbkaplan@thekaplanlawfirm.com

                        *Attorneys for Plaintiffs*